UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Samantha Orduno, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

Richard Pietrzak, in his individual capacity as
the Chief of Police of the City of Dayton; City
of Dayton; John and Jane Does (1-120),
acting in their individual capacity as
supervisors in the City of Dayton,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 14-1393 ADM/JSM

___

Sonia Miller-Van Oort, Esq., Jonathan A. Strauss, Esq., and Lorenz F. Fett, Jr., Esq., Sapientia Law Group, PLLC, Minneapolis, MN, and Susan M. Holden, Esq., Jeffrey M. Montpetit, Esq., and Marcia K. Miller, Esq., SiebenCarey, PA, Minneapolis, MN, on behalf of Plaintiff.

Stephanie A. Angolkar, Esq., Jon K. Iverson, Esq., and Susan M. Tindal, Esq., Iverson Reuvers Condon, Minneapolis, MN, on behalf of Defendants Richard Pietrzak and City of Dayton.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on Defendants City of Dayton and Richard Pietrzak's ("Defendants") Objection [Docket No. 92] to Magistrate Judge Janie S. Mayeron's August 29, 2016 Order ("Discovery Order") [Docket No. 85] granting in part Plaintiff Samantha Orduno's ("Orduno") Motion to Compel Discovery Responses [Docket No. 61]. For the reasons set forth below, the Objection is overruled.

## II. BACKGROUND

On May 2, 2014, Orduno filed this lawsuit alleging violations of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, et seq. ("DPPA"). Orduno served as City Administrator for the City of Dayton, Minnesota from 2005 until she was terminated in 2013. Orduno Aff.

[Docket No. 50] ¶ 2; First Angolkar Aff. [Docket No. 46] Ex. 1 at 2. During her tenure with the City, Pietrzak served as the Dayton Chief of Police. Compl. [Docket No. 1]. Orduno alleges that while Pietrzak was employed as Chief of Police, he accessed from the Minnesota Driver and Vehicle Services database (the "DVS Database") Orduno's personal information and that of at least 850 others for a purpose not permitted under the DPPA. Id. ¶¶ 42–53. She further alleges that the City of Dayton, through its supervisors, knew of Pietrzak's unlawful accesses and failed to monitor and prevent the accesses.[1] Id. ¶¶ 54–55, 69-76. Orduno's requested relief includes punitive damages for Defendants' "willful or reckless disregard of the law." 18 U.S.C. § 2724. This lawsuit began as a putative class action. Compl. ¶¶ 227–254.

Pietrzak denies the allegations and contends he accessed Orduno's private data for the permissible law enforcement purpose of investigating whether she was using an alias to hide her true name. First Angolkar Aff. Ex. 4 at 8–9.

On October 28, 2014, the Court granted in part a Motion to Dismiss by Defendants, holding that Orduno's claims for accesses occurring before May 2, 2010 were barred by the four year statute of limitations under the DPPA. Mem. Op. & Order, October 28, 2014 [Docket No. 24]. Pietrzak accessed Orduno's personal information on sixteen different occasions, ten of which were prior to May 2, 2010. See Pl's Response Defs.' Objs. at 4–5. Therefore, six of the sixteen accesses remain.

On November 10, 2015, the Court denied Orduno's Motion to Certify Class Action. See Mem. Op. & Order, Nov. 10, 2015 [Docket No. 54]. In December 2015, the Eighth Circuit

---

[1] While Orduno was the Dayton City Administrator, she describes herself as Pietrzak's "boss." Pl.'s Resp. Defs.' Obj. [Docket No. 94] at 1.

denied a petition by Orduno to appeal the denial of class certification. See Notice USCA J. [Docket No. 56]; Notice USCA Mandate [Docket No. 57].

In June 2016, Orduno obtained an audit from the Minnesota Department of Public Safety (the "DPS Audit") that listed all of Pietrzak's accesses of driver's license and motor vehicle information from the DVS Database from April 1, 2003 through December 21, 2012. Miller-Van Oort Aff. [Docket No. 95] ¶ 2. Pietrzak made 15,870 accesses of 5,747 different individuals during that time period. See Miller Aff. [Docket No. 64] Ex. 1. The day after obtaining the DPS Audit, Orduno served Defendants with a second set of Interrogatories and Request for Production of Documents requesting the reasons for each one of the 5,747 accesses listed in the DPS Audit. Id. Ex. 4 at 3–4. Defendants objected to the discovery request as overly broad, unduly burdensome, and irrelevant. Id. Ex. 4 at 4. Orduno filed a Motion to Compel Discovery Responses [Docket No. 61].

On August 2, 2016, while the Motion to Compel was pending, Orduno wrote a letter to the Court requesting permission to file a motion for reconsideration of the Order dismissing time-barred accesses and the Order denying class certification. See Letter to District Judge [Docket No. 68]. On August 11, 2016, the Court denied permission because Orduno failed to show compelling circumstances to justify reconsideration. See Letter from District Judge [Docket No. 76].

Also on August 11, 2016, Judge Mayeron orally granted in part Orduno's Motion to Compel. See Min. Entry, Aug. 11, 2016 [Docket No. 75]. Judge Mayeron's August 11 ruling is memorialized in the August 29, 2016 Discovery Order, which requires Defendants to provide an explanation for Pietrzak's purpose for accessing the drivers records of 200 individuals, rather

than 5,747 individuals. Discovery Order ¶¶ 1–2. Limiting the discovery request in this manner narrowed the number of accesses for which discovery is sought from over 15,700 accesses to 671. See Second Angolkar Aff. [Docket No. 93] Ex. 2.

On August 16, 2016, consistent with the Discovery Order, Orduno provided Defendants with a list of 200 individuals and requested the reasons Pietrzak accessed their private information. Id. ¶ 1, Ex. 1. The accesses were made by Pietrzak during a nine year time period spanning from 2003 to 2012. See generally, id. Ex. 2. Of the 200 individuals on the list, several were accessed numerous times by Pietrzak, including one person whose data was accessed more than 150 times. Id. at 7–9. The list also includes several groups of individuals who share the same last name, suggesting they are related.[2] The apparently related individuals were often accessed on the same date. See, e.g., id. at 1–3, 5, 10, 12.

Defendants object to the Discovery Order, arguing that the limited discovery request is still overly broad and unduly burdensome. Defendants contend that the discovery request is an attempt by Orduno to conduct class discovery seven months after the class certification motion was denied.

### III. DISCUSSION

**A. Standard of Review**

The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential. Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). The district court must affirm an order by a magistrate judge

---

[2] Of the 200 people on the list, nearly 130 share the same last name with one or more people on the list.

unless it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir.1996). "A decision is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" Knutson v. Blue Cross & Blue Shield of Minn., 254 F.R.D. 553, 556 (D. Minn. 2008) (quoting Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co., 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)).

B. Legal Standard

As of December 1, 2015, Rule 26 of the Federal Rules of Civil Procedure provides in pertinent part:

> **(b) Discovery Scope and Limits.**
>
> > **(1)** *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. Rule 26(b)(1). Federal Rule of Civil Procedure 26 is to be construed broadly and encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." In re Milk Prod. Antitrust Litig., 84 F. Supp. 2d

1016, 1027 (D. Minn. 1997) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)); Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) ("Rule 26(b) . . . is liberal in scope and interpretation").  To ensure Rule 26(b) is not "misapplied so as to allow fishing expeditions in discovery," a party must make a "threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."  Hofer, 981 F.2d at 380.  The threshold requirement of discoverability is met if the information sought is "relevant to the subject matter involved in the pending action."  Archer Daniels Midland Co. v. Aon Risk Serv., Inc. of Minn., 187 F.R.D. 578, 589 (D. Minn. 1999) (quoting Shelton v. Am. Motors, 805 F.2d 1323, 1326 (8th Cir. 1986)).  "[T]he standard of relevance in the context of discovery is broader than in the context of admissibility."  Hofer, 981 F.2d at 380.

   Rule 26(b)(1) also requires discovery to be proportional to the needs of the case, giving regard to the importance of the issues at stake, the amount in controversy, the parties' relevant access to the information, the parties' resources, the importance of the discovery to resolving the issues of the case, and whether the burden or expense of the discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1).

**C.  Defendants' Objection**

   Defendants argue that Orduno's discovery request, as modified by the Discovery Order, is overly broad and unduly burdensome.  According to Defendants, Pietrzak's 671 accesses of non-parties' personal information is not relevant or proportional to the six accesses of Orduno's information that remain at issue in this case.  Additionally, a significant number of the accesses are barred by the four year statute of limitations.  Defendants further argue that producing the

information would be overly burdensome to the small Dayton Police Department because providing an answer for all 671 accesses will require hundreds of hours by Dayton staff and Defendants' attorneys, and many of the records may no longer exist.

Treating the Discovery Order with the appropriate deference to which it is entitled, the Court cannot say that it is left with the "definite and firm conviction that a mistake has been committed" or that the Discovery Order is contrary to law. Chakales, 79 F.3d at 728.

With respect to relevance, the accesses are probative of Pietrzak's defense that he accessed Orduno's private information for a permissible law enforcement purpose—namely, to determine whether Orduno was using an alias and hiding her legal name to withhold potentially criminal information. First Angolkar Aff. Ex. 4 at 8–9. Orduno questions the credibility of this explanation and contends that Pietrzak's DVS access patterns show a long history of impermissibly accessing the personal information of Dayton employees and their families as well as Minnesota celebrities and their families, Minnesota politicians and their families, and other law enforcement officials and their families. In the context of this case, Pietrzak's access patterns as to these individuals is relevant to whether Pietrzak's defense is credible. Although Pietrzak's past misuse, if any, of the DVS Database does not necessarily mean that he accessed Orduno's information without a permissible purpose, it is relevant in considering whether Pietrzak's stated reason for accessing Orduno's data is believable.

The information ordered by Judge Mayeron is also relevant to the issue of punitive damages, which are permitted under the DPPA "upon proof of willful or reckless disregard of the law." 18 U.S.C. § 2724(b)(2). Orduno claims that Defendants acted with willful or reckless disregard of the law because Pietrzak allegedly has a long history of inappropriate use of the

DVS Database and that the City of Dayton did not monitor its officers' use of the DVS Database. The reasons for Pietrzak's repeated accesses of coworkers, politicians, and local celebrities and their families are probative of these issues.

That many of the 671 accesses are time-barred does not preclude them from being relevant. The Eighth Circuit has recognized that accesses falling outside the statute of limitations "still may be considered in assessing the plausibility of timely claims." McDonough v Anoka Cty., 799 F.3d 931, 946 (8th Cir. 2015).[3]

Regarding proportionality, the record shows that Judge Mayeron was mindful of proportionality when she narrowed Orduno's discovery request from the driver's records of over 5,000 individuals to 200. Under the circumstances of this case, the number of individuals and accesses is proportional because Orduno is seeking to demonstrate a pattern of misuse over a period of several years.

Additionally, the narrower discovery request is not overly burdensome, particularly given the repetitive nature of many of the accesses on the list. Defendants argue that each of the accesses will require approximately 30 minutes to investigate, resulting in a total of 335 staff hours and $8,921 in staff time. See Objection at 10. However, as stated earlier, more than 150

---

[3] Although the accesses are relevant for discovery purposes, any effort by Orduno to use the discovery to reargue the issue of class certification would be improper. As stated in the Court's August 11, 2016 letter, Orduno "has shown no justification for why [she] waited until seven months after the November 2015 Class Certification Order to discover the DPS audit from 2003 to 2012." Letter from District Judge at 2. Allowing Orduno to renew her class certification motion based on evidence that would have been available at the time of the original class certification motion would give Orduno an impermissible "second bite at the apple" on the class certification issue. See Dale & Selby Superette & Deli v. U.S. Dep't of Agric., 838 F. Supp. 1346, 1348 (D. Minn. 1993) (stating that a motion to reconsider "is not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances.").

of the accesses—over 20%—were of the same individual. The list also includes many groups of individuals with the same last name who were accessed on the same date. Many of the family groups accessed by Pietrzak include 5 or more individuals, with one group consisting of 17 members.[4] It is likely a single explanation will apply to multiple accesses of a given individual's information or to accesses of many individuals from the same family, thereby eliminating the need for a full 30 minute investigation of each and every one of the 671 accesses. Under these circumstances, the discovery will not impose an undue burden on the City of Dayton's resources, and any burden is outweighed by the likely benefit of the discovery.

Therefore, the Discovery Order is neither clearly erroneous or contrary to law.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Objection [Docket No. 92] is **OVERRULED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 5, 2016.

---

[4] More than 300 of the 671 accesses at issue pertain to individuals belonging to this 17 member family group. See Second Angolkar Aff. Ex. 2. This accounts for over 40% of the 671 access at issue.